IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANET L. ROYBAL,

        Plaintiff,

v.                                                                                          CIV 02-760 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Janet Roybal ("Roybal") worked as a stenographer from 1988 until April 1994, when, at age thirty-four, she quit working due to swelling and pain and headaches. She has been receiving private insurance disability benefits since that time. Her medical records as of 1995 mention fibromyalgia. Roybal also was diagnosed with a tumor on her pituitary gland sometime in 1994 and it was monitored for several years. On June 16, 1999, ten days after she married, Plaintiff underwent surgery to have the tumor removed. *E.g., Administrative Record* ("*Record*") at 40, 44, 53-54, 79, 84, 99, 110-11, 116, 166, 219.

In May 2000, Plaintiff applied for disability benefits based on fibromyalgia, pituitary adenoma, inflammation and pain throughout her body, swelling and weakness in her hands, and anxiety. Since the last day of her insured status is December 31, 1998, Roybal was required to establish a disability before that date. Her application was denied administratively both initially and on reconsideration. Administrative Law Judge ("ALJ") Larry E. Johnson held a hearing on December 20, 2001. *Id.* at 13, 26-33, 40, 45, 53, 211.

ALJ Johnson found that Plaintiff was not disabled because her medical records failed to show a "severe" impairment as of the date of her last insured status.  As such, he denied benefits at step two.  *See id.* at 13-15.  The Appeals Council declined review on May 3, 2002, thereby rendering the ALJ's decision final.  *Id.* at 4-5

This matter is before the court on Plaintiff's motion to reverse or remand, where only the diagnosis of fibromyalgia is at issue.  *See Docs. 15, 16.*  Roybal asserts that the ALJ erred in finding her not disabled at step two because her treating physician records from March 1999, after her insured status expired, conclusively diagnosed her with fibromyalgia.  She contends that this constitutes a retroactive diagnosis and that the nature of the disease and her testimony satisfy the minimal showing of severity necessary to meet her burden at step two.  *See Docs. 16, 18.*

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief.  *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992).  My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency.  *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).  I have read and carefully considered the entire record and affirm the decision of the Commissioner.

The Seventh Circuit noted that fibromyalgia is "a common, but elusive and mysterious, disease."  *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir. 1996).  It further explained that the causes of fibromyalgia are unknown,

> there is no cure and, of greatest importance to disability law, its
> symptoms are entirely subjective. There are no laboratory tests for
> the presence or severity of fibromyalgia. The principal symptoms
> are 'pain all over,' fatigue, disturbed sleep, stiffness, and – the only
> symptom that discriminates between it and other diseases of a
> rheumatic character – multiple tender spots, more precisely 18 fixed
> locations on the body (and the rule of thumb is that the patient must
> have at least 11 of them to be diagnosed as having fibromyalgia)
> that when pressed firmly cause the patient to flinch. All of these
> symptoms are easy to fake, although few applicants for disability
> benefits may yet be aware of the specific locations that if palpated
> will cause the patient who really has fibromyalgia to flinch. There is
> no serious doubt that Sarchet is afflicted with the disease but it is
> difficult to determine the severity of her condition because of the
> unavailability of objective clinical tests. Some people may have
> such a severe case of fibromyalgia as to be totally disabled from
> working, . . . but most do not and the question is whether Sarchet is
> one of the minority.

*Id.* at 306-07.

*Sarchet* apparently was a step five case, and the Seventh Circuit remanded finding the ALJ's opinion contained a "substantial number of illogical or erroneous statements that bear materially on her conclusion that Sarchet is not totally disabled." *Id.* at 307; *see also id.* (a vocational expert testified). Among other things, the ALJ there: faulted the claimant for consulting a rheumatologist, the very type of physician to consult for fibromyalgia; misunderstood the medical term "nonspecific" and focused on the absence of any swollen joints, which is not a symptom of fibromyalgia; mischaracterized the claimant's and vocational expert's testimony; and "made a number of unfounded sociological speculations" in arriving at her decision that the claimant was not credible. *See id.* at 307-08.

Unlike *Sarchet,* the case before me is a step two decision. At step two, a claimant establishes a "severe" impairment if she shows that the impairment has "more than a minimal

effect" and significantly interferes with basic work activities such as walking, standing, sitting, ability to follow instructions, and use of judgment. *See* 20 C.F.R. §§ 404.1520, 404.1520a, 416.920a, 416.921. The step two evaluation is made on the basis of the condition alleged and the medical evidence alone. "[A]t step two, the ALJ looks at the claimant's impairment or combination of impairments ***only*** and determines the impact the impairment would have on [her] ability to do work." *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997) (emphasis added).

A treating physician can issue a retrospective diagnosis, and it must be given substantial or controlling weight "unless good cause is shown to the contrary," and the ALJ explains the "specific legitimate reasons" for rejecting the medical opinion. *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir. 1987); *see also Potter v. Secretary of Health & Human Servs.,* 905 F.2d 1346, 1348 (10th Cir. 1990) ("treating physician may provide a retrospective diagnosis of a claimant's condition"); *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) (review of factors to be considered by ALJ in rejecting treating physician opinion).

However, a treating physician opinion, retrospective or otherwise, is not conclusive on the issue of disability. A retrospective diagnosis unaccompanied by evidence of a disability prior to the expiration of a claimant's insured status is insufficient. *Potter,* 905 F.2d at 1349; *see also Coleman v. Chater,* 58 F.3d 577, 579 (10th Cir. 1995); *see also Duran v. Barnhart,* CIV 02-593 KBM – ACE (Memorandum Opinion and Order; *Doc. 19* at 5; filed 3/3/03).

To support her retrospective diagnosis argument, Plaintiff relies on her reports of fibroymyalgia to Dr. William Davies in March 1999, and cites one of Dr. Lyle B. Amer's records, who also began seeing Plaintiff in March 1999. *See Doc.* 16 at 4 (citing *Record* at 135, 142-43). Dr. Davies's medical records appear in Exhibit 5F of the Record, but he did not diagnose Plaintiff

4

with fibromyalgia.  He simply noted it as one of her history of problems and that she was to see Dr. Amer for her "chronic fibromyalgia."  *Record* at 135; *see also id.* at 136-38.  Therefore, his records do not constitute a retroactive diagnosis.  Even though the ALJ did not discuss Dr. Davies' records in connection with the fibromyalgia impairment, and I cannot conclude that he erred in so doing.  *See id.* at 14 (discussion Dr. Davies's records in connection with Plaintiff's complaints of atypical chest pain).

Dr. Amer's records comprise Exhibit 6F of the Record.  Based on the exhibits cited in the ALJ's decision, I conclude that he did not review, or at least, discuss Dr. Amer's records.  Nevertheless, Dr. Amer's handwritten records are scant and do not provide a definitive retrospective diagnosis of fibromyalgia.  For example, as of March 1999, Dr. Amer noted and assessed "fibromyalgia" with a question mark.  *Id.* at 143.  As best I can read his handwriting, Dr. Amer's August 1999 notes assess fibromyalgia as "stable."  *Id.* at 142.  While his December 1999 notes assess fibromyalgia, by February 2000, he again appears to question the diagnosis by also noting to rule out inflammatory arthritis.  *Id.* at 140, 141.  In any event, none of Dr. Amer's notes make the fibromyalgia diagnosis based on trigger points and, although he notes Plaintiff cannot work at her previous occupation, they do not mention any limitations based on the fibromyalgia.  *Id.* at 140; *see also id.* at 141-43.

In rejecting the rest of the medical evidence of fibromyalgia as not establishing the requisite severity at step two, ALJ Johnson reasoned:

> In early 1999 Ms. Roybal was described as anxious to become pregnant.  In June 1999 Ms. Roybal was described as quite active; exercising regularly; and denying much fatigue.  She had a normal gait, stance, intact strength and reflexes.  The references to fibromyalgia are insufficient to establish a definitive diagnosis of

>    this disease based upon acceptable clinical observations, such as
>    trigger points, or to establish any related functional limitations. She
>    was described as having a 'low level of fibromyalgia' in July 1995
>    (Exhibit 4F9). Ms Roybal reported to a treating source in 1999
>    that it was progressive weight gain; what this physician describes as
>    vague fibromyalgia type symptoms; hypertension; fatigue; and mild
>    blurring existing since1993 that ultimately led to her job loss
>    (Exhibit 3F16). However, there is simply no evidence supporting
>    these allegations or the presence of a "severe" impairment(s)
>    inducing a disabling condition existing at the time of either Ms.
>    Roybal's alleged onset date in 1994 or at the expiration of her
>    disability insured status at the end of 1998.

*Record* at 14.

ALJ Johnson considered the medical evidence and gave legitimate reasons to conclude it did not show fibromyalgia with the requisite severity prior to the expiration of Plaintiff's insured status. Under these circumstances, coupled with the lack of a retrospective diagnosis that would be entitled to controlling weight on the issue, I affirm the decision of the Commissioner. *See Cavanaugh v. Apfel,* 1999 WL 59673 at *1 (10th Cir. 1999) (unpublished) (audiologist report did not provide "that any hearing problems identified would significantly limit [claimant's] ability do work-related activities and only other evidence was nonexamining physician who found report "did not indicate a severe impairment;" in absence of any contrary evidence court found it "cannot say that the ALJ erred" in finding hearing loss not severe at step two); *Henderson v. Chater,* 1995 WL 324496 (10th Cir .1995) (ALJ did not err at step two where no evidence of a physician telling claimant "to restrict any of his activities because of his alleged" impaired leg and as for claimant's complaints of chest pain and shortness of breath, it was significant that claimant reported to medical examiner that "he no longer experienced any chest pains").

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 15)* is DENIED and the decision of the Commissioner is affirmed. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.